ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| FIDEICOMISO HERNÁNDEZ CASTRODAD, representado por su FIDUCIARIO JOSÉ E. HERNÁNDEZ CASTRODAD, Apelante, v. DEPARTAMENTO DE JUSTICIA DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO p/c de la HON. WANDA VÁZQUEZ GARCE, secretaria del Departamento de Justicia de Puerto Rico, REGISTRO DE LA PROPIEDAD p/c del HON. JOAQUÍN DEL RÍO RODRÍGUEZ, director del Registro de la Propiedad, Apelada. | KLAN202200832 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Caguas. Civil núm.: CG2018CV02004 Sobre: desahucio/cobro de dinero. |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Romero García y la Juez Méndez Miró.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 31 de enero de 2023.

Este recurso fue instado por la parte apelante del título el 17 de octubre de 2022. En él, la apelante solicita la revocación de la *Sentencia* dictada por el foro primario el 13 de septiembre de 2022, notificada el 15 de septiembre, mediante la cual el tribunal desestimó la demanda de desahucio y cobro de dinero instada por la apelante el 14 de septiembre de 2018.

Examinado el recurso y sus anejos, así como la oposición presentada por la apelada el 16 de diciembre de 2022, a la luz del derecho aplicable, este Tribunal concluye que procede **confirmar** la antes citada sentencia.

Número identificador

SEN2023_____

I

El 14 de septiembre de 2018, la parte demandante y apelante presentó una demanda contra el Estado sobre desahucio y cobro de dinero[1]. Surge de las alegaciones de la demanda y de la evidencia presentada, que el Departamento de Justicia (Justicia) había suscrito un contrato de arrendamiento con el señor Hernández Barreras[2]. Este poseía un edificio en Angora Office Park en el Municipio de Caguas, en el que Justicia tenía ubicadas las oficinas del Registro de la Propiedad de Caguas[3].

Este contrato tenía vigencia desde el 2 de julio de 2012, hasta el 30 de junio de 2017. La apelante alegó que, poco antes del vencimiento de ese contrato, inició ciertas gestiones con Justicia con el fin de renovar el contrato de arrendamiento. Finalmente, en el mes de junio de 2018, suscribieron un nuevo contrato con vigencia de un (1) año[4]. No obstante, Justicia ocupó este por seis (6) meses, pues mudó las oficinas del Registro de la Propiedad a otro local. Así pues, el reclamo del demandante se circunscribió al periodo del 1 de julio de 2017, hasta el 10 de julio de 2018. Esto, pues durante ese periodo, Justicia ocupó el local sin pagar mensualidad alguna[5].

El 28 de septiembre de 2018, el Estado presentó una *Moción para convertir los procedimientos a la vía ordinaria y solicitud de desestimación*. Esto, pues consideró que no existía un contrato firmado válido y vigente, por lo que la partida de la suma reclamada no era exigible. A su vez, el 19 de noviembre de 2018, el apelante presentó una *Moción para objetar*

---

[1] *Véase*, apéndice del recurso, a las págs. 22-88.

[2] Valga apuntar que en el contrato compareció el señor Rafael Hernández Barreras en calidad de arrendador de la propiedad y fue quien suscribió el documento. Durante el pleito, nunca se aclaró el particular, sino que se representó en todo momento al Fideicomiso Hernández Castrodad como el arrendador del inmueble y a su Fiduciario, José Hernández Castrodad. *Íd.*, a la pág. 1.

[3] *Íd.*, a las págs. 27-32.

[4] *Íd.*, a las págs. 47-53.

[5] *Íd.*, a las págs. 54-88.

*solicitud de desestimación*[6]. En síntesis, alegó que el Estado ocupó su propiedad por un periodo en que no pagó un canon de arrendamiento, lo cual constituyó una incautación física de su propiedad. Sin embargo, el 18 de junio de 2020, notificada el 9 de junio de 2020, el Tribunal de Primera Instancia emitió una *Resolución* en la que declaró sin lugar la *Moción de Desestimación*[7].

Inconforme, el 3 de julio de 2020, el Estado presentó una *Reconsideración*, la cual fue denegada mediante la *Resolución* emitida el 2 de octubre de 2020, y notificada el 5 de octubre de 2020[8].

Luego de varias incidencias procesales, y el desistimiento de la causa de acción sobre el desahucio, el 4 de marzo de 2022, la parte demandante radicó una *Moción de Sentencia Sumaria*[9]. En esta, solicitó al foro primario que declarara con lugar la demanda en cobro de dinero ya que el Estado ocupó su local sin pagar mensualidad. Además, adujo que la permanencia del Estado comprendía una incautación o "taking" de su propiedad. Así pues, solicitó la justa compensación.

De otro lado, el Estado presentó su *Oposición a la sentencia sumaria y solicitud de sentencia sumaria*[10]. Arguyó que el periodo que se pretendía cobrar estaba desprovisto de un contrato válido, por lo que no se había configurado una obligación que vinculara al Estado. Esto, a la luz de las leyes de contratación gubernamental.

Así las cosas, el 15 de septiembre de 2022, el foro primario dictó una *Sentencia Sumaria* en la que declaró con lugar la solicitud del Estado y como consecuencia, sin lugar la solicitud del apelante.

---

[6] *Véase*, apéndice del recurso, a las págs. 121-151.

[7] *Íd.*, a las págs. 159.

[8] Apuntamos que, el 2 de noviembre de 2020, el Estado acudió ante este Tribunal mediante petición de *certiorari* (KLCE202001096). Esta fue denegada el 9 de marzo de 2021. Así las cosas, el 14 de mayo de 2021, el Estado presentó una petición de *certiorari* ante el Tribunal Supremo (CC-2021-321). Sin embargo, esta petición también fue denegada el 30 de junio de 2021. *Véase*, apéndice del recurso, a las págs. 169-186.

[9] *Íd.*, a las págs. 187-276.

[10] *Íd.*, a las págs. 277-309.

Inconforme con esta decisión, el apelante acudió ante nos el 17 de octubre de 2022, mediante este recurso de apelación, en el que le imputó al foro primario la comisión de los siguientes errores:

Primer error: Erró el Tribunal de Primera Instancia al no determinar que el Departamento de Justicia del ELA actuó con trampa y mentira al FHC para evitar que el FHC iniciara un proceso de desahucio y mantenerse en el local del FHC sin pagar renta, mientras gestionaba con un tercero el arrendamiento de un local sustituto.

Segundo error: Erró el Tribunal de Primera Instancia al determinar que la posesión por el Departamento de Justicia del ELA del local del FHC, mediante trampa y mentira para evitar que el FHC iniciara un proceso de desahucio, no resultó en una interferencia sustancial con el derecho de propiedad del FHC protegido por las Constituciones de Puerto Rico y de Estados Unidos.

Tercer error: Erró el Tribunal de Primera Instancia al determinar que la posesión por el Departamento de Justicia del ELA del local de FHC, mediante trampa y mentira no es base para que se compense al FHC por el tiempo que el ELA mantuvo la posesión.

Cuarto error: Erró el Tribunal de Primera Instancia al no determinar que la ocupación por el ELA del local del FHC sin pagar renta, mientras lo inducía a error de que sí lo haría, es base suficiente para establecer una violación a los derechos constitucionales del FHC que justifica el pago de renta.

Quinto error: Erró el Tribunal de Primera Instancia al no establecer el valor de la renta a pagar por el ELA al FHC desde julio de 2017 a junio de 2018 a base del canon establecido en el contrato de corto término suscrito en el año 2018 entre las partes.

Sexto error: Erró el Tribunal de Primera Instancia al concluir que el ELA no ocupó la propiedad del FHC de manera ilícita o sin su consentimiento, basándose en la hipótesis de que ya que el ELA entró al local bajo el contrato original del año 1999, aunque haya expirado su término y permanezca sin pagar y poseyendo el local de manera exclusiva, excluye la posibilidad que la posesión sea ilícita.

Séptimo Error: Erró el Tribunal de Primera Instancia al concluir que no existió una restricción que redundara en la privación total del uso de la propiedad del FHC que sostenga una incautación.

Octavo Error: Erró el Tribunal de Primera Instancia al concluir que no hay evidencia o datos contundentes que señalen algún escolio impuesto por el Gobierno que impidiera al FHC [*sic*] a lanzar al ELA [*sic*] apenas culminó el contrato.

Noveno Error: Erró el Tribunal de Primera Instancia al concluir que no se produjo una incautación por parte del ELA que configure una violación constitucional.

>       Décimo Error: Erró el Tribunal de Primera Instancia al concluir
>       que la jurisprudencia del Tribunal Supremo federal citada por
>       el FHC no son [*sic*] de aplicación al caso de autos.

(Énfasis y mayúsculas omitidas).

Por su parte, el 16 de diciembre de 2022, el Estado presentó su oposición al recurso. En síntesis, adujo que el periodo que se pretendía cobrar estaba desprovisto de un contrato válido, por lo que no se había configurado una obligación que vinculara al Estado.

## II

## A

La Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, establece que una moción de sentencia sumaria debe estar fundamentada por declaraciones juradas, o por aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. En su consecuencia, podrá dictarse sentencia sumaria cuando no exista ninguna controversia real sobre los hechos materiales y esenciales del caso y, además, si el derecho aplicable lo justifica. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Un hecho material es aquel que tiene un impacto sobre el resultado de la reclamación según el derecho sustantivo aplicable. *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). A su vez, la controversia relacionada a un hecho material debe ser real, "por lo que cualquier duda es insuficiente para derrotar una Solicitud de Sentencia Sumaria". *Íd.*, a las págs. 213-214.

Así, el Tribunal Supremo ha señalado que "la parte que solicita la sentencia sumaria en un pleito está en la obligación de demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente que a la luz del derecho sustantivo determinaría una sentencia a su favor como cuestión de ley". *Rivera, et al. v. Superior Pkg., Inc., et al.*, 132 DPR 115, 133 (1992). A su vez, al evaluar la solicitud de sentencia sumaria, "se tendrán como ciertos los hechos no controvertidos que

consten en los documentos y las declaraciones juradas ofrecidas por la parte promovente". *Piñero v. A.A.A.*, 146 DPR 890, 904 (1998).

Por último, no procede resolver un caso por la vía sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones alternativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o, (4) como cuestión de derecho, no procede. *Echandi v. Stewart Title Guaranty Co.*, 174 DPR 355, 368 (2008). Además, un tribunal no deberá dictar sentencia sumaria cuando existen elementos subjetivos de intención, negligencia, propósitos mentales o cuando el factor de credibilidad es esencial. *Carpets & Rugs v. Tropical Reps.*, 175 DPR, a la pág. 638.

B

Debido a la obligación del Estado en cuanto al manejo de los fondos públicos conforme a principios fiduciarios y éticos, se ha dispuesto de unos requisitos en cuanto a la contratación gubernamental. *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR 448, 456 (2014), citando a *Jaap Corp. v. Depto. Estado et al.*, 187 DPR 730, 739 (2013); *CFSE v. Unión de Médicos*, 170 DPR 443, 452 (2007). En lo pertinente, la Constitución de Puerto Rico dispone que, "[s]ólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley." Art. VI, Sec. 9, Const. ELA, LPRA, Tomo 1.

En ocasión de cumplir con el mandato constitucional, la legislatura ha aprobado leyes que imponen controles fiscales y de contratación gubernamental de manera que las entidades gubernamentales cumplan con este precepto para una sana administración de los fondos públicos. *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR, a la pág. *456*. En específico, la *Ley de Contabilidad del Gobierno de Puerto Rico*, Ley Núm. 230-1974, 3 LPRA sec. 283, *et seq.*, se creó con el propósito de "establecer

la política pública respecto al control y contabilidad de fondos y propiedad

pública".

Como política pública establecida en la precitada Ley, el Artículo 2

establece lo siguiente:

La política pública del Gobierno de Puerto Rico con relación al control y la contabilidad de los fondos y propiedad públicos será: […]

(b) que la contabilidad del gobierno de Puerto Rico refleje claramente los resultados de sus operaciones financieras, provea la información financiera necesaria para la administración de las operaciones gubernamentales y para la preparación y ejecución del presupuesto, y constituya un control efectivo sobre los ingresos, desembolsos, fondos, propiedad y otros activos del gobierno.

3 LPRA sec. 283a.

Por lo anterior, "todas las asignaciones y los fondos autorizados para

las atenciones de un año económico serán aplicados exclusivamente al

pago de gastos legítimamente incurridos durante el respectivo año, o al

pago de obligaciones legalmente contraídas y debidamente asentadas en

los libros durante dicho año." 3 LPRA sec. 283g.

Asimismo, "[l]as dependencias ordenarán obligaciones y

desembolsos de sus fondos públicos únicamente para obligar o pagar

servicios, suministros de materiales y equipo, reclamaciones u otros

conceptos que estuvieran autorizados por ley." 3 LPRA sec. 283h. De las

disposiciones de la ley se desprende que la facultad del Estado para

desembolsar fondos públicos está limitada por los procedimientos y

preceptos ahí establecidos. Además, también está supeditada a los

preceptos de la sana administración pública delineados en nuestra

jurisprudencia. *Jaap Corp. v. Depto. Estado et al.*, 187 DPR 730, 739

(2013).

Así, el Tribunal Supremo ha interpretado que, con el fin de garantizar

una sana administración de los fondos públicos, los contratos

gubernamentales deben cumplir con los siguientes requisitos: (1) constar

por escrito; (2) se debe mantener un registro fiel con miras *a, prima facie,* establecer su existencia; (3) se remita copia a la Oficina del Contralor como medio de una doble constancia de su otorgamiento, términos y existencia; y, (4) se acredite la certeza de tiempo, esto es, haber sido realizado y otorgado quince (15) días antes. *Ocasio v. Alcade Mun. de Maunabo*, 121 DPR 37, 54 (1988).

Más importante aún, en *ALCO Corp. v. Mun. de Toa Alta*, 183 DPR 530 (2011), nuestro Tribunal Supremo rechazó la contratación municipal retroactiva y determinó que era necesaria la existencia de un contrato **escrito** antes de prestar cualquier servicio. Asimismo, el Tribunal Supremo resolvió que la contratación retroactiva sobre el arrendamiento de un bien resulta contraria a la normativa sobre contratación gubernamental. *Íd.*, a la pág. 552. Esto así, ya que "la contratación gubernamental retroactiva hace inoperante todo *control previo* a la formación de una obligación del Gobierno, lo cual es contrario a la política pública establecida en el Art. 2 (e) de la Ley Núm. 230". *Jaap Corp. v. Depto. Estado et al.*, 187 DPR, a la pág. 748.  Permitir tal práctica, impediría que "terceros como la Oficina del Contralor cumplan con la política pública de la Ley Núm. 230 y que los ciudadanos puedan obtener el contrato escrito para pasar juicio sobre la contratación, pues el contrato se escribe y publica luego de la ejecución y consumación de las obligaciones allí dispuestas." *Íd.*

Ahora bien, las partes privadas que contratan con los municipios y las agencias del gobierno no solo tienen que contratar de acuerdo con las exigencias de la Ley, sino que se presume que las partes que así contratan conocen sus especificaciones. *CMI Hospital v. Depto. Salud,* 171 DPR 313, 321 (2007). Asimismo, se requiere "que las partes privadas ejerzan un rol más activo al contratar con los municipios y exijan 'prueba fehaciente de que el Gobierno cumplió con su deber'." *Íd.*, que cita a *Las Marías v. Municipio de San Juan*, 159 DPR 868, 880 (2003). Por lo anterior, "para

evitar situaciones irregulares en las que el Estado termine lucrándose injustificadamente, las partes deberán ser meticulosas al otorgar sus contratos." *Vicar Builders v. ELA et al.*, 192 DPR 256, 269 (2015). La consecuencia de que el contrato no se reduzca a escrito es que el contratista está impedido de reclamar contra el Estado el dinero por los servicios prestados.

Cabe que señalar que el requisito de que los contratos obren por escrito "se ha convertido en uno de carácter formal y sustantivo, cuyo propósito principal es evitar el desembolso ilegal de fondos gubernamentales, [y] fomentar la transparencia en la gestión pública". R. de Félix Dávila, *El Estado como contratante: hacia un nuevo modelo de contratación gubernamental*, 84 Rev. Jur. UPR 1137, 1141 (2015).

C

El Artículo II, Sección 9 de la Constitución de Puerto Rico dispone que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley". Art. II, Sec. 9, Const. ELA, LPRA, Tomo 1. Conforme a esta disposición constitucional, el Tribunal Supremo ha reconocido que el Estado tiene facultad para expropiar una propiedad privada para fines públicos, ya sea instando una acción de expropiación, imponiendo restricciones mediante reglamento o incautándose físicamente de una propiedad, afectando sustancialmente su uso. *Aner Investment Corp. v. JP,* 148 DPR 241, 247 (1999); *Velázquez Velázquez v. ELA*, 135 DPR 84, 88 (1994).

Ahora bien, dicha facultad está limitada por la exigencia de que el inmueble "expropiado sea para un fin público, el cual conlleve la obligación de pagar una justa compensación". *Íd*; *Culebra Enterprises Corp. v. ELA*, 143 DPR 935, 946 (1997). Es decir, "para que el Estado pueda expropiar forzosamente una propiedad privada, la Constitución exige que pague una justa compensación, destine el bien expropiado a un fin o uso público y

proceda con sujeción a las leyes que regulan este procedimiento en nuestra jurisdicción". *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586 (2021).

Generalmente, el Estado ejerce directamente su poder constitucional al instar un recurso de expropiación. *Culebra Enterprises Corp. v. ELA*, 143 DPR, a la pág. 946. Sin embargo, existen casos excepcionales en los que el Estado puede ocupar o incautar un derecho real sin haber iniciado el procedimiento judicial de expropiación forzosa y sin haber consignado el pago de la justa compensación. *Amador Roberts et als. v. ELA,* 191 DPR 268, 279 (2014); *ELA v. Northwestern Const., Inc.,* 103 DPR 377, 382 (1975).

En esos casos, el titular del derecho propietario puede presentar una acción de expropiación a la inversa. *Amador Roberts et als. v. ELA,* 191 DPR, a la pág. 279; *Aner Investment Corp. v. JP,* 148 DPR, a la pág. 247. Se le denomina expropiación a la inversa porque, "en ausencia de compensación o de un procedimiento de expropiación iniciado por el Estado, la insta el dueño de la propiedad contra el Estado para obtener la compensación a la que tiene derecho". *Íd.*, pág. 280. **Una vez se presenta la acción de expropiación a la inversa, el propietario deberá demostrar que el Estado ha ocupado o incautado su propiedad.** *Amador Roberts et als. v. ELA,* 191 DPR, a la pág. 280. Es decir, **"para que proceda la acción de expropiación a la inversa, el demandante tiene que demostrar que su situación particular configura una incautación física de su propiedad o una restricción impermisible de su uso".** (Énfasis nuestro). *Torres Marrero v. Alcaldesa Ponce,* 199 DPR 493, 501 (2017) (Sentencia).

La obligación de pagar una compensación justa surge cuando el Estado realiza una incautación de hecho, al afectar de manera sustancial el uso de la propiedad, físicamente o por medio de su reglamentación. *Culebra Enterprises Corp. v. ELA*, 143 DPR, a la pág. 947. Según *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 US 419, 435 (1982), **cuando ocurre una incautación física el propietario pierde sus**

**facultades básicas de ocupar su propiedad, beneficiarse de su uso y, a la vez, excluir a otras personas de su uso y posesión.** Véase, además, *Torres Marrero v. Alcaldesa Ponce,* 199 DPR, a la pág. 502.

En esos casos, la compensación dependerá del valor de uso de la propiedad durante el tiempo en que el Estado privó al dueño de todo uso productivo de ella. *Torres Marrero v. Alcaldesa Ponce,* 199 DPR, a la pág. 502. Se han reconocido dos instancias en las que la acción efectuada por el Estado constituye una incautación *per se*, que requiere categóricamente el pago de una justa compensación. La primera de estas instancias surge cuando el Estado, o un tercero que actúe con su anuencia, ocupa física y **permanentemente** una propiedad privada. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 US, a la pág. 426.

Por otro lado, según el *Black's Law Dictionary* (19th ed. 2019) "[t]here is a taking of property when government action directly interferes with or substantially disturbs the owner's use and enjoyment of the property". Así también, *Black's Law Dictionary* define el término "de facto taking" como "[a] taking in which an entity clothed with eminent-domain power substantially interferes with an owner's use, possession, or enjoyment of property".

Ahora bien, la determinación final de si ocurrió una incautación variará dependiendo de los hechos específicos de cada controversia, "sopesando distintos valores para obtener un equilibrio dinámico y razonable entre los intereses particulares y los de la comunidad". *Culebra Enterprises Corp. v. ELA,* 143 DPR, a la pág. 948. Entre los elementos que se deben considerar, el Tribunal Supremo ha destacado los siguientes: (1) la naturaleza de la acción gubernamental; (2) el impacto económico de la reglamentación sobre las personas o entidades afectadas; y, (3) si el impacto económico sobre el individuo es menor que el interés protegido por la reglamentación. *Íd.*

III

De entrada, debemos señalar que el presente recurso versa sobre la concesión de una sentencia sumaria. Así, procedemos conforme al estándar de revisión de la denegatoria o concesión de una moción de sentencia sumaria, según lo resuelto en *Meléndez González v. M. Cuebas*, 193 DPR 100 (2015).

Luego de analizar la solicitud de sentencia sumaria presentada por la apelante, así como la oposición y solicitud presentada por la apelada, concluimos que los hechos materiales acogidos por el foro primario no están en controversia. A tales efectos, acogemos las determinaciones de hechos incluidas por el Tribunal de Primera Instancia en su *Sentencia*[11].

Ahora bien, en atención a que los hechos materiales no se encuentran en controversia, corresponde revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho en este caso.

Evaluado el recurso y su oposición, este Tribunal confirma la determinación del Tribunal de Primera Instancia. Veamos.

Por estar estrechamente relacionados, discutiremos el primero, segundo, tercero, cuarto y quinto error de manera conjunta. En estos, el apelante adujo, en síntesis, que el foro primario erró al concluir que tal posesión no era base para que se le compensase por el tiempo que el Estado mantuvo la posesión del inmueble.

Según el derecho anteriormente expuesto, concluimos que no le asiste la razón al apelante. Veamos.

Durante el periodo del 1 de julio de 2017, hasta el 30 de junio de 2018, no existió contrato escrito alguno entre la parte apelante y el Departamento de Justicia. Por tanto, no procede el cobro de los cánones de arrendamiento reclamados, pues no existió una relación contractual válida entre las partes que permitiera que el Estado desembolsase fondos públicos para el pago de los cánones de arrendamiento reclamados. Concluir lo contrario equivaldría a permitir una práctica de contratación retroactiva. *ALCO Corp. v. Mun. de Toa Alta*, 183 DPR 530 (2011).

---

[11] *Véase*, apéndice del recurso, a las págs. 3-4.

De otra parte, en sus señalamientos de error sexto, séptimo, octavo, noveno y décimo, el apelante arguyó que la permanencia de Justicia en su local, sin pagar cánones de arrendamiento, constituyó una incautación física de su propiedad.

De conformidad con la prueba presentada, concluimos que la apelante falló en demostrar los elementos determinantes para validar una incautación por parte del Estado.

Según *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 US, a la pág. 426, se han reconocido dos instancias en las que la acción llevada a cabo por el Estado puede ser considerada una "incautación *per se*", que requiere categóricamente el pago de una justa compensación. La primera de estas instancias surge cuando el Estado, o un tercero que actúe con su anuencia, ocupa física y **permanentemente** una propiedad privada.

Surge de la evidencia presentada, que el Estado permaneció en la propiedad sin pagar cánones de arrendamiento **temporalmente**, por la tolerancia de la parte apelante y mientras negociaban un nuevo contrato de arrendamiento.

Por tanto, concluimos que no estamos ante un caso de ocupación física permanente de tal naturaleza que exija categóricamente el pago de una justa compensación. Esto, pues la permanencia del Departamento de Justicia en la propiedad no privó al apelante de su posesión permanente ni de otros derechos propietarios.

IV

Por los fundamentos antes expuestos, **confirmamos** la *Sentencia* emitida el 13 de septiembre de 2022, notificada el 15 de septiembre de 2022, por el Tribunal de Primera Instancia, Sala Superior de Caguas.

Notifíquese.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones